USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/26/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

POPULUS MEDIA, INC.,

                Plaintiff,

-against-

JEFFERY ERB,

                Defendant.

1:23-cv-4160 (MKV)

**OPINION AND ORDER
GRANTING IN PART
AND DENYING IN PART
MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

    Plaintiff Populus Media Inc. ("Plaintiff") brings this diversity action against one of its founders and former employees, Jeffery Erb ("Defendant"), alleging various state law claims against him, including breach of contract, breach of fiduciary duties, fraud, and violations of New York's faithless servant doctrine. Defendant moves to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND[1]

    Plaintiff Populus (or "the Company") is a media and virtual patient acquisition platform leveraging the telehealth and virtual care industry. [ECF No. 12] ("Amended Complaint," hereinafter "the Complaint") ¶¶ 1, 7. Beginning in late 2019, Defendant worked with the other founders of Plaintiff to help establish the Company. Am. Comp. ¶ 9. As part of his role in establishing Populus, Defendant was granted the right to purchase 2,000,000 shares of Plaintiff's common stock pursuant to the terms of a Restricted Purchase Agreement ("the Stock Agreement"), executed in April 2020. Am. Comp. ¶ 10; Am. Comp., Ex. A. The shares purchased by Defendant

---

[1] The facts are taken from the Amended Complaint, and for purposes of this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

pursuant to the Stock Agreement would vest quarterly based on Defendant's continuous service with Plaintiff. Am. Comp. ¶ 11. In the event that Defendant was terminated "for cause," as defined in the Stock Agreement, any unvested shares would be subject to repurchase. Am. Comp. ¶ 12.

In addition, as part of his ongoing work with Plaintiff, Defendant also signed a Confidentiality and Assignment Agreement ("the Confidentiality Agreement"). Am. Comp. ¶ 13; Am. Comp., Ex. B. Relevant here, the Confidentiality Agreement contains a provision titled "Paragraph 5: Commitment to Company; Conflicts of Interest," which provides:

> Unless otherwise stated in a Related Agreement (defined below), I shall, during the course of my Engagement, **devote my full-time efforts to Company's business and I shall not engage in any other business activity that conflicts with my duties to Company**. I shall advise the Chief Executive Officer of Company ("CEO") or the CEO's nominee at such time as any activity of either Company or another business presents me with a conflict of interest or the appearance of a conflict of interest as an employee or service provider of Company. I shall take whatever action is requested of me by Company to resolve any conflict or appearance of conflict which it finds to exist.

Am. Comp., Ex. B.

In September 2021, both Plaintiff and Defendant decided that Defendant should have more of a substantive role in the Company. Am. Comp. ¶ 15. Accordingly, Defendant executed an Employment Agreement ("the Employment Agreement") with Plaintiff to serve as Chief Marketing and Strategy Officer and work as a full-time employee of Populus. Am. Comp. ¶ 15. The Employment Agreement expressly incorporated by reference the Confidentiality Agreement. *See* Am. Comp., Ex. C ¶ 9. At the time Defendant executed the Employment Agreement, he informed Plaintiff that he would be resigning from his prior position at McCann Health Engagement ("McCann Health"), and that such resignation would require a 90-day transition period. Am. Comp. ¶ 16. Thus, the Employment Agreement provided for a November 29, 2021 "start date" in order to allow Defendant to transition from McCann Health. Am. Comp. ¶ 15.

Over time, however, the relationship between Plaintiff and Defendant soured. Plaintiff

alleges that more than a year after executing the Employment Agreement, Defendant continued to work for McCann Health to the detriment of Plaintiff. Am. Comp. ¶ 17. For example, during his time working "full-time" for Plaintiff, Defendant held himself out publicly as President of McCann Health, while not acknowledging his role with Plaintiff. Am. Comp. ¶ 18. Specifically, throughout much of 2022, on LinkedIn, Twitter, other websites and in media interviews, Defendant represented himself as President of McCann Health and not as an employee of Plaintiff. Am. Comp. ¶ 18. Plaintiff claims that because of these dual roles, Defendant's availability was limited, his work product was poor and inconsistent, and his work performance suffered. Am. Comp. ¶ 19. Defendant was out of the office several days per week and continued to hold his position at, and devote a substantial amount of his time to, McCann Health. Am. Comp. ¶ 19.

Plaintiff further alleges that during Defendant's time at the Company, he requested—and was permitted—to hire someone to supposedly assist him with his marketing efforts for Plaintiff. Am. Comp. ¶ 20. After receiving permission, Defendant recommended retaining an independent contractor for a marketing manager role. Am. Comp. ¶ 21. Plaintiff alleges that in an effort to get the Company to accept his recommendation, Defendant represented that the individual had many years of relevant marketing experience, when in reality he knew, or should have known, that she had previously been a real estate agent with little to no experience in the healthcare industry. Am. Comp. ¶ 21. Plaintiff alleges that this individual was someone with whom Defendant had a romantic relationship. Am. Comp. ¶ 21. In fact, during work hours and using work materials, Defendant allegedly sent this individual inappropriate material of a sexual and pornographic nature. Am. Comp. ¶ 22. Ultimately, Plaintiff alleges that Defendant engaged in material dishonesty to purposely hire someone with whom he was romantically involved. Am. Comp. ¶ 23.

In or around June 2022, Defendant committed to being interviewed remotely by a pharmaceutical marketing and commercialization company for a promotional campaign on behalf

of Populus related to a conference based in France. Am. Comp. ¶ 24. However, rather than have the interview be conducted remotely, Defendant and his marketing manager traveled to France together, where he was instead interviewed in person. Am. Comp. ¶ 24. Plaintiff alleges that Defendant failed to prepare adequately for the interview because he was more focused on spending time with his marketing manager and going to parties. Am. Comp. ¶ 25. As a result, the interview was unsuccessful, and the $20,000 payment Plaintiff had made to the marketing company in connection with the promotional campaign provided no benefit to Plaintiff. Am. Comp. ¶¶ 25, 26. Notably, to cover up the trip and his poor performance during the interview, Defendant allegedly altered the invoice for the interview to indicate that it was done remotely rather than in person and refused to authorize the release of the interview. Am. Comp. ¶ 26.

On December 16, 2022, Defendant's employment with Plaintiff was terminated for cause for breach of material terms within the Employment Agreement, including breach of the Confidentiality Agreement, for material bad faith and material dishonesty, and for breach of his fiduciary duties to Plaintiff. Am. Comp. ¶ 27. Specifically, Plaintiff asserts that Defendant was terminated for, among other things, failure to devote his efforts full-time to Plaintiff's business, fraudulent statements made to Plaintiff concerning his previous employment and the qualifications of individuals he hired to work on his team, altering the campaign invoice to cover up his trip to France, and his continued willful and repeated failure to perform his duties effectively. Am. Comp. ¶ 28.

Further investigation following Defendant's termination with Plaintiff uncovered Defendant's ongoing relationship with Digital Health Networks, a company with which Defendant signed a $25,000 license on behalf of Plaintiff for which there was little to no value to Plaintiff. Am. Comp. ¶ 29. Plaintiff alleges that Defendant has an equity or other interest in Digital Health Networks that Defendant did not disclose to Plaintiff and signed such license for his own benefit

rather than for that of Plaintiff in further violation of his duties to Plaintiff. Am. Comp. ¶ 29.

## PROCEDURAL HISTORY

Plaintiff initially commenced this action in the Supreme Court of the State of New York, County of New York, and Defendant thereafter removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1367, and 1441. [ECF No. 3]. Plaintiff subsequently filed an Amended Complaint ("the Complaint") with leave of the Court. *See* Am. Comp. The Complaint asserts four causes of action: (1) breach of contract; (2) breach of fiduciary duties, including duty of loyalty, duty of care, and duty of good faith; (3) fraud; and (4) violations of New York's faithless servant doctrine. Am. Comp. ¶¶ 30–63. Defendant now moves to dismiss all claims under Rule 12(b)(6). *See* Motion to Dismiss [ECF No. 16]; Memorandum of Law [ECF No. 16-2] ("Def. Mem."). Plaintiff opposed the motion. *See* Memorandum of Law in Opposition to Motion to Dismiss [ECF No. 20] ("Pl. Opp."), and Defendant filed a Reply. *See* Reply Memorandum of Law [ECF No. 21] ("Def. Reply").

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In considering this motion, the Court "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).

## ANALYSIS

**I.     Breach of Contract Claim (Claim One)**

To plead a cause of action for breach of contract under New York law,[2] a plaintiff must allege that: "(1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages." *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52, 198 N.E.3d 1282, 1287 (2022) (internal citations omitted); *see also Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 F. App'x 274, 276 (2d Cir. 2018). A district court may dismiss a breach of contract claim at the motion to dismiss stage "*only if* the terms of the contract are unambiguous." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 156 (2d Cir. 2016) (emphasis added). "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." *Id*.

Defendant does not dispute that the first two elements are met here. Thus, the Court only addresses whether Plaintiff has adequately alleged that Defendant breached his contractual obligations and that Defendant's alleged breaches resulted in damages.

    A.  Plaintiff Has Adequately Alleged a Breach of
        the Employment and Confidentiality Agreements.

Plaintiff alleges in Claim One that Defendant breached his Employment Agreement "by failing to execute and fulfill his job duties and responsibilities as stated in his job description" within that agreement. Am. Comp. ¶ 31. Specifically, Plaintiff alleges that Defendant breached the Confidentiality Agreement, incorporated by reference into the Employment Agreement, when he continued to work for McCann Health, while simultaneously working for Plaintiff, and thus failed to devote his efforts "full-time" to the Company's business, in violation of Paragraph 5 of

---

[2] The Employment Agreement and Confidentiality Agreement both expressly provide that they are governed by New York law, *see* Am. Comp., Ex. B ¶ 9 Am. Comp., Ex. C ¶ 9, and neither party raises any argument to the contrary.

6

the Confidentiality Agreement.  Am. Comp. ¶ 32.  In response, Defendant argues that there is no provision in either Agreement which prevents Defendant from working for another entity during his employment.  Def. Mem. at 8.  Defendant maintains that the Agreements are completely silent on "moonlighting" or alternate work.  Def. Mem. at 8.

Paragraph 5 of the Confidentiality Agreement, titled "Commitment to Company; Conflicts of Interest," provides, in part, that "during the course of [Defendant's] Engagement [with Plaintiff], [he will] *devote [his] full-time efforts to [Plaintiff's] business* and [] shall not engage in any other business activity that conflicts with [his] duties to [Plaintiff]."  Am. Comp., Ex. B ¶ 5 (emphasis added).  It further provides that Defendant "*shall advise [Plaintiff]* at such time as any activity of either Company or another business presents [him] with a conflict of interest *or the appearance of a conflict of interest* as an employee or service provider of [Plaintiff]."  *Id*. (emphasis added).  Defendant argues that Plaintiff can "identify" no language in this provision "that would make [Defendant] working for McCann, failing to resign from McCann, or holding himself out as President of McCann a clear breach of contract."  Def. Mem. at 8–9.

Plaintiff's allegations plausibly allege that, even if Defendant were able to (as Defendant puts it) "moonlight," he nonetheless may have breached Paragraph 5.  For instance, Plaintiff alleges that throughout much of 2022, on LinkedIn, Twitter, other websites and in media interviews, Defendant represented himself as President of McCann Health and not as an employee of Plaintiff.  *Compare* Am. Comp. ¶ 18, *with* Am. Comp. Ex. B ¶ 5 (requiring Defendant to advise Plaintiff if any activity of another business presents him with "the appearance of a conflict of interest").  Moreover, Plaintiff alleges that "Defendant's availability was limited . . . He was out of the office many days per week and, on information and belief, continued to hold his position at and devote a substantial amount of his time to McCann Health."  *Compare* Am. Comp. ¶ 19, *with* Am. Comp. Ex. B ¶ 5 (requiring Defendant to "devote [his] *full-time* efforts to [Plaintiff's]

7

business") (emphasis added).  Defendant's interpretation may ultimately prove to be correct. However, Plaintiff's contract claim should *not* be dismissed based on Defendant's assumed meaning of key contractual language alone. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 295 (2d Cir. 2015) ("At the motion to dismiss stage, a district court may dismiss a breach of contract claim only if the terms of the contract [] unambiguous[ly]" support Defendant's interpretation). Therefore, at this stage, and drawing all reasonable inferences in Plaintiff's favor, *see ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), the Court holds that Plaintiff has plausibly alleged that Defendant breached the Employment Agreement and the incorporated Confidentiality Agreement.

      B. <u>Plaintiff Has Adequately Stated a Claim for Damages Resulting from Defendant's Purported Breaches.</u>

Defendant first argues that Plaintiff's breach of contract claim is "moot" because there are "no provision[s] in any relevant contract (or applicable statute in the Amended Complaint) that would permit" Plaintiff to obtain the damages it seeks in its Prayer for Relief. Def. Mem. at 6–8. Specifically, Defendant argues that "the subject contracts (Stock Agreement, Confidentiality Agreement, and Employment Contract) provide for specific remedies in the event *of a termination for Cause*" and that "[a] plain reading of these contracts leads to the conclusion the remedies available in the event of a *breach* are the foregoing *only*." Def. Mem. at 7 (emphasis added). Indeed, the New York Court of Appeals has recognized that "when the parties by their contract provide for the consequences *of a breach*, lay down a rule to admeasure the damages and agree when they are to be paid, the remedy thus provided must be exclusively followed." *McCready v. Lindenborn*, 172 N.Y. 400, 409, 65 N.E. 208, 211 (1902) (emphasis added); *see also X.L.O. Concrete Corp. v. John T. Brady & Co.*, 104 A.D.2d 181, 184, 482 N.Y.S.2d 476, 479 (1st Dep't 1984), *aff'd*, 66 N.Y.2d 970, 489 N.E.2d 768 (1985).

8

Nonetheless, Defendant's argument incorrectly equates specific provisions in the Agreements relating to termination for cause to a term providing for *exclusive* remedies for a breach of *any* provision in the *entire* Agreement. The alleged "remedies" in the Employment Agreement referred to by Defendant, however, are *not* remedies for breach of contract. For example, the Employment Agreement simply outlines Plaintiff's obligations (or lack thereof) when Defendant is terminated for Cause. *See* Am. Comp. Ex. C ("If your employment is terminated by the Company for Cause, or by you other than for Good Reason . . . or due to your death or 'disability' . . . the Company will pay you any Base Salary through the Termination Date and unreimbursed expenses accrued but unpaid as of the Termination Date, but the Company will have no obligation to pay you the Severance Payment."). The Employment Agreement is silent, however, as to remedies for Defendant's breach of other provisions of the agreements. Am. Comp. Ex. C, ¶ 5. Furthermore, Defendant concedes that the Confidentiality Agreement, incorporated by reference into the Employment Agreement, provides for "specific performance and other injunctive relief," "*in addition to such other remedies* which may be available" in the event of a breach of contract. Am. Comp. Ex. B, ¶ 12 (emphasis added).[3] Drawing all inferences in Plaintiff's favor at this stage, *see ATSI Communs, Inc.*, 493 F.3d at 98, Plaintiff's interpretation of the subject Agreements—and therefore its claim for damages based on that interpretation—is plausible. Accordingly, for purposes of this motion, the Court does not read the subject Agreements to limit the remedies at law available upon a breach.

Rather, the Court applies the "elementary" rule that a party injured by a breach is entitled

---

[3] Defendant urges that "other remedies" is a reference to the remedies set forth in the Employment Agreement and Stock Agreement *only*, and any other reading would "unnecessarily read agreements and provisions into the contract." Def. Mem. at 7. Such an analysis is beyond the scope of a motion to dismiss. At this stage, the Court must accept the allegations in the Complaint as true and draw all reasonable inferences in the plaintiff's favor. *See ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 53 (2d Cir. 2012) (finding that a claim predicated on an ambiguous contract term is not dismissible on the pleadings if plaintiff's reading is plausible).

9

to recover damages that are the " 'natural and probable consequence of the breach.' " *APL Co. PTE v. Blue Water Shipping U.S. Inc.*, 592 F.3d 108, 111 (2d Cir. 2010) (quoting *Bi–Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 192, 856 N.Y.S.2d 505, 508, 886 N.E.2d 127, 130 (2008) (internal quotation marks and citation omitted)).  Here, the Complaint plausibly alleges that Defendant devoted little to no time to Plaintiff's business, which led to him collecting a salary without providing the services promised and further engaged in waste and potential self-dealing, which included failed marketing efforts and expenditures of $45,000 that provided no value to Plaintiff.  Am. Comp. ¶ 34.  The Complaint further alleges that, as a result, Plaintiff has been damaged in an amount equal to the compensation paid to Defendant, which at minimum, amounts to $230,000 (*i.e.*, one year's salary), the cost of failed marketing efforts (*i.e.*, at least $45,000), plus costs, and attorney's fees.  Am. Comp. ¶ 35.  Such allegations plausibly allege that the purported damages Plaintiff has incurred are the "natural and probable consequence[s]" of Defendant's alleged misconduct and failure to devote his "full-time" efforts to Plaintiff.  As such, Defendant's motion to dismiss Plaintiff's breach of contract claim is denied.

## II.     Fraud Claim (Claim Three)

Plaintiff alleges in Claim Three that Defendant engaged in fraudulent activity (1) when he falsely represented to Plaintiff that he had resigned from his previous position at McCann Health, and (2) when he made false representations about the qualifications of the individual he hired to work on his team, with whom he had a personal relationship.  Am. Comp. ¶¶ 47–48.  "Proof of fraud under New York law requires a showing that (1) the defendant made a material[ly] false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance."  *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415–16 (2d Cir. 2006) (internal quotation marks omitted).  Additionally, pursuant to the Federal Rules of Civil Procedure, "in all averments

of fraud or mistake the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

Defendant largely argues that Plaintiff's fraud claim must be dismissed because the cause of action, as pled, lacks the requisite specificity and particularity under Rule 9(b). Def. Mem. at 14. "But despite Rule 9(b)'s insistence on specificity when pleading fraud claims, 'it does not elevate the standard of certainty that a pleading must attain beyond the ordinary level of plausibility.' " *Pilat v. Amedisys, Inc.*, No. 23-566, 2024 WL 177990, at *2 (2d Cir. Jan. 17, 2024) (quoting *United States ex rel. Chorches for Bankr. Est. of Fabula v. American Medical Response, Inc.*, 865 F.3d 71, 88 (2d Cir. 2017)). Instead, Rule 9(b) simply demands that "the pleading specify (1) the fraudulent statements, (2) the speaker, (3) where and when the statements were made, and (4) why the statements were fraudulent." *Chorches*, 865 F.3d at 88.

Plaintiff's allegations satisfy the specificity requirement of Rule 9(b) and otherwise state a claim for fraud. First, Plaintiff alleges that, on September 10, 2021 and thereafter, Defendant made fraudulent statements when he falsely represented to Plaintiff that he had resigned from his previous position at McCann Health. Am. Comp. ¶ 47. Plaintiff alleges that such statements were made "[w]hen Defendant was brought on as Chief Marketing and Strategy Officer," Am. Comp. ¶ 15, at which point he informed Plaintiff he would require a "brief" transition period of approximately 90 days. Am. Comp. ¶ 16. Plaintiff further alleges that those statements were fraudulent because, more than a year later, Defendant continued to work for McCann Health, including holding himself out publicly as President of McCann Health on social media, other websites, and media interviews. Am. Comp. ¶ 18. Lastly, Plaintiff alleges that, in reliance on Defendant's misrepresentations, it continued to employ Defendant as its Chief Marketing Officer and pay him a large salary to Plaintiff's detriment. Am. Comp. ¶ 51. These allegations adequately specify "(1) the fraudulent statements, (2) the speaker, (3) where and when the statements were

made, and (4) why the statements were fraudulent." *Chorches*, 865 F.3d at 88.

Plaintiff also adequately alleges that Defendant engaged in fraudulent activity when he made false representations about the qualifications of the individual whom he hired to work on his team, with whom he had a personal relationship. Am. Comp. ¶ 48. The Complaint asserts that during Defendant's employment with Plaintiff, he requested and was permitted to hire someone to assist him with his marketing efforts.[4] Am. Comp. ¶ 20. Plaintiff alleges that Defendant recommended retaining an independent contractor for a marketing manager role and intentionally misrepresented her qualifications to Plaintiff so that it would accept his recommendation and hire her. Am. Comp. ¶ 21. The Complaint specifies that Defendant's representations about the individual's qualifications were fraudulent because "he claimed she had many years of relevant marketing experience, when in reality he knew, or should have known, that she had previously been a real estate agent with little to no experience in the healthcare industry." Am. Comp. ¶ 21. Plaintiff further states Defendant had personal knowledge that the individual did not meet the position requirements because he had a personal relationship with her. Am. Comp. ¶ 49. As a result, Plaintiff, relying on Defendant's misrepresentations, hired the unqualified individual and paid her a salary. Am. Comp. ¶¶ 51; Am. Comp. at 11. Such allegations contain the requisite specificity and particularity for fraud claims. *See Chorches*, 865 F.3d at 88. As such, Defendant's motion to dismiss Plaintiff's fraud claim is denied.

### III. Breach of Fiduciary Duties (Claims Two and Four)

As a threshold matter, Defendant argues that Delaware law should apply to Plaintiff's

---

[4] Defendant attempts to argue that an individual cannot commit fraud "in carrying out his duties and/or requested duties," *see* Def. Mem. at 14, but cites absolutely no case law for this proposition. Defendant asserts that because he requested and was permitted to hire someone to assist him with marketing, to constitute fraud, Defendant "would have had to misrepresent the need to hire someone" in the first place. Def. Mem. at 14. This argument is entirely without merit which is made more apparent by Defendant's lack of support. Plaintiff does not allege that Defendant misrepresented the need for an assistant. Instead, Plaintiff expressly alleges that Defendant engaged in fraud when he misrepresented the *qualifications* of the individual whom he sought to hire for personal reasons. Am. Comp. ¶ 21.

breach of fiduciary duties claim because Plaintiff is incorporated in Delaware. Def. Mem. at 15. Plaintiff disagrees, arguing that New York law applies because Defendant served as an officer of Plaintiff in his role under the Employment Agreement, which is expressly governed by New York law. Pl. Opp. at 16. As this case arises under the diversity jurisdiction of a federal court sitting in New York, New York's conflict of law rules govern what law applies to Plaintiff's claims. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

New York applies the internal affairs doctrine to claims for breach of fiduciary duty and, thus, applies the law of the state of incorporation to such claims. *See Walton v. Morgan Stanley & Co., Inc.*, 623 F.2d 796, 798 n.3 (2d Cir. 1980) (noting that the choice-of-law rules of New York dictate "that the law of the state of incorporation governs an allegation of breach of fiduciary duty owed to a corporation"); *see also Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp.2d 601, 607 (S.D.N.Y. 2011) (applying New York's internal affairs doctrine to breach of fiduciary duty claims to hold Delaware law applied); *Steinberg v. Sherman*, No. 07-CV-1001, 2008 WL 2156726, at *3 (S.D.N.Y. May 8, 2008) ("For breach of fiduciary duty claims, New York applies the law of the state of incorporation.") (*citing Walton*, 623 F.2d at 798 n.3). Accordingly, the Court finds that because Plaintiff is a Delaware incorporated company, Am. Comp. ¶ 7, Delaware law governs Plaintiff's fiduciary duties claim.[5]

---

[5] While it is true that the New York Court of Appeals has rejected an "automatic application" of the internal affairs doctrine, *see Greenspun v. Lindley*, 36 N.Y.2d 473, 474, 369 N.Y.S.2d 123, 126, 330 N.E.2d 79 (1975), the doctrine creates "a *presumption* in favor of applying the law of the state of incorporation"—here, Delaware. *In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 179 (S.D.N.Y. 2014), *aff'd sub nom. In re MF Glob. Holdings Ltd. Inv. Litig. (DeAngelis v. Corzine)*, 611 F. App'x 34 (2d Cir. 2015) (emphasis added). Plaintiff's argument that the Employment Agreement, which governs Defendant's employment terms with Plaintiff, is governed by New York law does not overcome the presumption in favor of applying Delaware law. Plaintiff's claim for breach of fiduciary duties does not come from the employment contract between the parties. Rather, the claim is derived from the fiduciary duties and roles springing from Defendant's status as an officer of a corporation incorporated in Delaware. Moreover, the Court notes that, other than the fact that Defendant's Employment Agreement is governed by New York law, there are little to no contacts with New York. *See Greenspun*, 36 N.Y.2d at 474 (applying New York's internal affairs doctrine to hold that the law of the state of incorporation applied to breach of fiduciary duty claims in the "absence [] of any proof of significant contacts with the State of New York."). Here, Plaintiff is incorporated in Delaware with its principal place of business in New Jersey. Am. Comp. ¶ 7. Defendant is a resident of Pennsylvania. Am. Comp.

Under Delaware law, a claim for a breach of these fiduciary duties "has only two formal elements: (i) the existence of a fiduciary duty that the defendant owes to the plaintiff and (ii) a breach of that duty." *Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 840–41 (Del. Ch. 2022); *see also Est. of Eller v. Bartron*, 31 A.3d 895, 897 (Del. 2011). Under Delaware law, directors and officers of corporations owe fiduciary duties of care, good faith, and loyalty. *Gantler v. Stephens*, 965 A.2d 695, 708–09 (Del. 2009) (emphasis added).

A. <u>Interplay Between Fiduciary Duties and the Faithless Servant Doctrine</u>

Plaintiff asserts a claim for breach of Defendant's fiduciary duties (Claim Four) and a *separate* claim under *New York's* faithless servant doctrine (Claim Two) as two distinct causes of action. Am. Comp. ¶¶ 36–45, 54–63. Indeed, Plaintiff specifically invokes New York law with respect to its faithless servant claim (Claim Two) in the Amended Complaint. Am. Comp. ¶¶ 36–45. Delaware courts, however, are unclear on the "interplay between the faithless servant doctrine under New York law for an individual who is an officer of a Delaware corporation, and thus owes fiduciary obligations *governed by Delaware law*," as is the case here. *See Pers. Touch Holding Corp. v. Glaubach*, No. CV 11199-CB, 2019 WL 937180, at *27 (Del. Ch. Feb. 25, 2019), *judgment entered sub nom. Pers. Touch Holding Corp. v. Felix Glaubach*, D.D.S. (Del. Ch. 2019). Moreover, Delaware law does not appear to have its own parallel faithless servant doctrine. *Pers. Touch*, 2019 WL 937180, at *27. Am. Comp. ¶¶ 36–45.

In any event, Plaintiff's breach of fiduciary duties claim and its faithless servant claim are predicated on precisely the same factual allegations. Plaintiff alleges that Defendant is liable under both claims because he, among other things, (1) failed to resign from his prior employment, which adversely affected his job performance for Plaintiff (*see* Am. Comp. ¶¶ 37, 40, 43, 60), and (2)

---

¶ 8. Moreover, there are *no* allegations in the Complaint asserting that any alleged misconduct or activity took place in New York.

hired an individual based on fraudulent representations about her experience because he was in a romantic relationship with her (*see* Am. Comp. ¶¶ 40, 41, 60). Therefore, to the extent that Plaintiff's allegations relating to its faithless servant claim factually support Plaintiff's breach of fiduciary duties claim, the Court construes them as such, and redresses those allegations as supporting Plaintiff's adequately-pled fiduciary duties claim.[6]

Having said that, in Claim Four, Plaintiff asserts that Defendant breached his fiduciary duties (plural). Am. Comp. ¶¶ 54–63. "Officers of Delaware corporations, like directors, owe fiduciary duties of care *and* loyalty." *Gantler*, 965 A.2d at 708–09 (emphasis added). Here, as an undisputed former officer of Populus, Defendant does not dispute the existence of a fiduciary relationship with Plaintiff. Instead, Defendant argues only that Plaintiff has failed to adequately allege that he has breached any of the fiduciary duties he owed.

B. Duty of Loyalty and Good Faith (Claim Four)

"[T]he duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 842 (Del. Ch.), *judgment entered sub nom. In re Metro Storage Int'l LLC v. Harron* (Del. Ch. 2022) (quoting *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993)). Moreover, corporate fiduciaries "are not permitted to use their position of trust and confidence to further their private interests." *Metro Storage*, 275 A.3d at 842 (quoting *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del.

---

[6] The Court notes, and the parties concede, that even "New York courts are far from clear regarding the contours of—and interplay between—a claim for breach of fiduciary duty and the faithless servant doctrine." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 242 (2d Cir. 2020); Def. Mem. at 12; Pl. Opp. at 15. However, many courts applying New York law have treated claims for breach of the duty of loyalty and claims brought under the faithless-servant doctrine as "essentially the same." *Yukos*, 977 F.3d at 242; *see also Schanfield v. Sojitz Corp. of America*, 663 F. Supp.2d 305, 348 (S.D.N.Y. 2009) (noting that "a claim of breach of the duty of loyalty in New York" is "sometimes referred to as the 'faithless servant doctrine' "). Thus, the Court's decision to redress Plaintiff's faithless servant claim allegations as allegations supporting its breach of fiduciary duties claim would be warranted even if such claims were governed by New York law.

1939)). "The duty of loyalty [also] includes a requirement to act in good faith, which is 'a subsidiary element, *i.e.*, a condition, of the fundamental duty of loyalty.'" *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (cleaned up). "A failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation." *In re Walt Disney Co. Deriv. Litig. (Disney II)*, 906 A.2d 27, 67 (Del. 2006) (cleaned up); *accord Stone*, 911 A.2d at 369 (quoting *Disney II*, 906 A.2d at 67).

Defendant argues that, measured against this standard, Plaintiff's allegations for breach of the duty of loyalty and good faith fall far short. Def. Mem. at 11–13. The Court disagrees. Plaintiff alleges that Defendant failed to resign from his prior employment at McCann Health, despite informing Plaintiff that he had done so, which "adversely affected his job performance for Plaintiff." *See* Am. Comp. ¶¶ 37, 40, 43, 60. Plaintiff further alleges that Defendant's position at McCann Health limited his availability to devote time to Plaintiff, resulting in "poor" and "inconsistent" work product. Am. Comp. ¶ 19. Such allegations adequately allege that when Defendant maintained his position at McCann Health, Defendant did not act in the "best interest of the [Plaintiff]." *Metro Storage*, 275 A.3d at 842. The allegations further state a reasonable inference that Plaintiff "*intentionally* act[ed] with a purpose other than that of advancing the best interests of the corporation," because he lied about resigning from McCann Health, emphasizing that Defendant knew that such actions were unfavorable to Plaintiff. *Disney II*, 906 A.2d at 67.

This reasoning equally applies to Plaintiff's allegations that Defendant elevated his own personal interests over Plaintiff's interests when he hired an unqualified independent contractor based solely on the fact that he had a personal relationship with her, and after misrepresenting her qualifications. Am. Comp. ¶ 19. Similarly, Plaintiff's allegation that, during a business trip, Defendant was more focused on partying and entertaining his romantic partner than preparing for

the promotional campaign interview, *see* Am. Comp. ¶ 41, plausibly alleges that Defendant "use[d] [his] position of trust and confidence to further [his] private interests," to the detriment of Plaintiff. *See Guth*, 5 A.2d at 510. Accordingly, Defendant's motion to dismiss Plaintiff's claim for breach of the duty of loyalty is denied.

### C. Duty of Care (Claim Four)

Defendant also argues that Plaintiff has failed to adequately allege that Defendant breached his duty of care (Claim Four). "An [officer] has a duty to use reasonable care, competence, and diligence, and the applicable standard takes into account any special skills or knowledge possessed by the agent." *Metro Storage*, 275 A.3d at 844. In the corporate context, "[d]irector [or officer] liability for breaching the duty of care 'is predicated upon concepts of gross negligence.'" *Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2001) (quoting *McMullin v. Beran*, 765 A.2d 910, 916 (Del. 2000)); *see also In re Baker Hughes Inc. Merger Litig.*, No. 19-CV-0638 (AGB), 2020 WL 6281427, at *15 (Del. Ch. Oct. 27, 2020); *Morrison v. Berry*, 2019 WL 7369431, at *22 (Del. Ch. Dec. 31, 2019) (applying gross negligence standard to officer conduct). "Gross negligence involves more than simple carelessness. To plead gross negligence, a plaintiff must allege 'conduct that constitutes reckless indifference or actions that are without the bounds of reason.'" *Morrison*, 2019 WL 7369431, at *22 (quoting *Zucker v. Hassell*, 2016 WL 7011351, at *7 (Del. Ch. Nov. 30, 2016)); *see also Baker Hughes Inc.*, 2020 WL 6281427, at *15.

The Court notes that both parties' briefing is almost entirely bereft of any case law supporting their respective positions. And indeed, Defendant correctly recognizes that much of the case law analyzing breaches of fiduciary duties are brought in the context of derivative shareholder actions, in which shareholders bring claims where major corporate decisions are made to the clear financial detriment of shareholders. *See* Def. Mem. at 15. Notwithstanding, at the motion to dismiss stage, Plaintiff is merely required to allege sufficient factual matter, accepted as

17

true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

As such, the Court finds that Plaintiff's allegations that Defendant elevated his personal interests over the Company's when he hired an unqualified independent contractor based solely on the fact that he had a personal relationship with her, spent company resources to take her on an alleged business trip to France, and altered invoices to cover up his trip and failed marketing ventures, *see e.g.*, Am. Comp. ¶¶ 40, 41, 60, sufficiently plead that Defendant's conduct "constitute[d] reckless indifference or actions that are without the bounds of reason." *Zucker v. Hassell*, 2016 WL 7011351, at *7; *Morrison*, 2019 WL 7369431, at *22. Moreover, Plaintiff alleges that Defendant lied to Plaintiff when he represented that he had resigned from McCann Health, which in turn caused him to perform poorly and generate inconsistent work product for Plaintiff due to his limited availability (given his continued position at McCann). These allegations also sufficiently plead that Defendant failed to "use reasonable care, competence, [and/or] diligence" in exercising his duties to Plaintiff. *Metro Storage*, 275 A.3d at 844; Am. Comp. ¶¶ 19, 40, 41, 60. The motion to dismiss Plaintiff's breach of the duty of care is therefore denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. Specifically, Plaintiff's faithless servant claim (Claim Two) is DISMISSED to the extent that Plaintiff is purporting to assert a separate claim under this New York law doctrine. Plaintiff's claims for breach of contract (Claim One), fraud (Claim Three), and breach of fiduciary duties (Claim Four) adequately state a claim. The Clerk of the Court is respectfully requested to terminate docket entry 16.

**SO ORDERED.**

Date: March 26, 2024  
New York, NY

_____
MARY KAY VYSKOCIL  
United States District Judge